UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                    Case No. 12-cv-20617
                                                      Honorable Patrick J. Duggan

ALVIN J. TURNER

       Defendant.
_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION TO
VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28
U.S.C. § 2255 AND DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY**

      Alvin Turner, a federal prisoner confined at the Federal Correctional

Institution in Milan, Michigan, has filed a pro se motion to vacate, set aside, or

correct sentence pursuant to 28 U.S.C. § 2255, in which he seeks to set aside his

plea-based conviction for conspiracy to possess with intent to distribute and to

distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1)

and 846.  In seeking relief from this Court, Turner relies on five basic arguments.

The first argument is that his guilty plea was coerced and tainted by the

prosecutor's threat to file a sentence enhancement.  The remaining arguments

implicate the Sixth Amendment to the United States Constitution, specifically, the

right to effective assistance of counsel.  Turner contends that his attorney rendered

constitutionally-inadequate assistance on the following grounds: (1) counsel failed to seek enforcement of an Attorney General issued memorandum on the subject of federal sentence enhancement practices; (2) counsel created a conflict of interest by advising Turner to accept a collateral attack waiver in his plea; (3) counsel failed to object to violations of the *McNabb-Mallory* rule and the Speedy Trial Act, 18 U.S.C. § 3161; and (4) counsel failed to object to several reversible Rule 11 violations that occurred during Turner's plea hearing.  Turner asks that this Court set his conviction aside, or, in the alternative, asks this Court to hold an evidentiary hearing to establish the factual predicates of his various claims.  For the reasons set forth below, the Court declines to conduct an evidentiary hearing, denies Turner's motion, and declines to issue a certificate of appealability.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Sometime prior to May 15, 2012, the Drug Enforcement Administration ("DEA") intercepted a shipment from Arizona containing ten kilograms of cocaine that were meant to be delivered to Turner.  On May 15, Turner traveled to a hotel in Woodhaven, Michigan to retrieve the product.  Turner arrived at the hotel as scheduled, took possession of what he believed to be ten kilograms of cocaine,[1] and departed in a vehicle driven by another man.  Soon thereafter, law enforcement

---

[1] Unbeknownst to Turner, he did not pick up a full ten kilograms of cocaine, but rather, ten kilograms of a white powdery substance that merely contained a representative sample of the intercepted cocaine.

2

officials stopped the vehicle in which Turner was traveling.  A canine ("K9") unit was dispatched to the scene and detected narcotics in the vehicle.  At approximately 11:26 AM, Turner and the driver were taken into custody.

Law enforcement officials advised Turner of his *Miranda* rights upon taking him into custody, which Turner waived prior to being interviewed.  During this interview, Turner admitted that he took possession of what he believed to be ten kilograms of cocaine, and also acknowledged that the supply was sent to him from Arizona.  While in custody, Turner signed a waiver of appearance, effectively waiving his right to appear before the nearest magistrate judge without unnecessary delay.  Because he signed this waiver, and because he agreed to cooperate with the DEA, Turner was released from custody at approximately 5:30 PM.  At the time of his arrest, Turner was on supervised release from a 2003 conviction for conspiracy to possess with intent to distribute and to distribute more than fifty grams of crack.

On September 18, 2012, a federal grand jury charged Turner in a two-count indictment with conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine (Count I), and attempted possession with intent to distribute five kilograms or more of cocaine (Count II), both in violation of 21 U.S.C. §§ 841(a)(1) and 846.  (ECF No. 3.)

On September 12, 2013, nearly one year after the grand jury issued the indictment, Turner pleaded guilty to Count I (the conspiracy count) in exchange for

the Government refraining from seeking a sentence enhancement and dismissing

Count II (the attempt count).  The terms of the plea were set forth in a Rule 11

agreement, which Turner signed.  (Plea Ag., ECF No. 20.)  The sentencing

guidelines for the offense in Count I ranged from 120-135 months.  However, the

operative plea agreement called for a higher sentence.  Specifically, Turner and the

Government agreed that Turner would recommend and seek a sentence of no less

than 180 months (fifteen years) because he acknowledged that the Government

could enhance his sentence to a minimum of 240 months (twenty years) pursuant

to 21 U.S.C. § 851.[2]  In addition to setting forth the specifics regarding the

sentence, the plea agreement contained appellate and collateral attack waivers.

　　　During the plea hearing, which was held on September 12, 2013, Turner

acknowledged his understanding of the terms of the Rule 11 plea agreement:

> THE COURT: I have before me a document entitled a Rule 11 plea
> agreement which appears on page four to indicate that defendant's
> guideline range is 120 to 135 months, is that your understanding of
> the range you've agreed to?
>
> THE DEFENDANT: Yes.
>
> THE COURT: On page 5 at 3(a) under the topic "Imprisonment", it
> says "The sentence of imprisonment may not exceed the top of the
> sentencing guideline as determined by paragraph 2B", which is 135
> months, do you understand that?

---

[2] Title 21 U.S.C. § 851 governs recidivist enhancements filed by the
Government.  While the Court need not exhaustively discuss the mechanics of
recidivist enhancements, the statute permits a prosecutor to seek a sentence
enhancement by filing an information delineating a defendant's prior convictions.

THE DEFENDANT: Yes.

THE COURT: And it also indicates that the Court must impose a
statutory sentence of at least ten years.

THE DEFENDANT: Yes.

THE COURT: It also indicates, pursuant to this agreement, the
Government and Defendant, the court must impose a sentence of
imprisonment on Count One of at least 15 years, that's your
understanding?

THE DEFENDANT: Yes.

(Plea Hr'g Tr. 5, ECF No. 23.)  After a series of questions ensuring that Turner

understood the terms of the plea, that he was pleading freely and voluntarily, and

that he was not coerced into pleading guilty, the Court accepted Turner's guilty

plea.  (*Id.* at 9.)

On December 17, 2013, and in accordance with the provisions contained in

the Rule 11 agreement, the Court sentenced Turner to a 180-month term of

incarceration with the Bureau of Prisons, to be followed by five years of

supervised release.  (Sent'g Hr'g Tr. 13-14, ECF No. 24.)

On December 24, 2014, Turner filed a motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255.  (ECF No. 25.)  Pursuant to a directive

from the Court, the Government responded to Turner's motion on February 13,

2015.  (ECF No. 29.)  Then on March 4, 2015, the Court received Turner's

"Motion to Amend in Relation-Back to the Original § 2255 Petition" and a

5

"Motion to Expand the Scope of the § 2255 Proceedings Record."  (ECF Nos. 30,

31.)   It is not entirely clear what Turner seeks in the former, although he does

specifically object to the Court's show cause order requiring the Government to

file a response to his motion.  This objection is entirely unfounded, as Rule 4(b) of

the Rules Governing Section 2255 Proceedings requires a court to order a response

from the Government if the petition is not dismissed after preliminary review.  In

the latter motion, Turner presents additional legal argument and exhibits.  The

Court notes that it has considered the materials presented in both March 4 motions,

therefore, grants both motions to the extent they seek such consideration but denies

both motions to the extent that they could be construed to request any specific

relief from this Court.

## II.    GOVERNING LEGAL STANDARD

Under 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a [federal] court . . . claiming
> the right to be released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United States, or that the
> court was without jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by law, or is
> otherwise subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the sentence.

In order to prevail upon such a motion, "the movant must allege as a basis for

relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the

statutory limits; or (3) an error of fact of law that was so fundamental as to render

6

the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

To prevail on a § 2255 motion alleging constitutional error in connection with a guilty plea, a prisoner "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea[.]" *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1721-22 (1993.)) "Relief is warranted only where a [prisoner] has shown a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 2305 (1974)). In order to prevail on a § 2255 motion alleging non-constitutional error, a prisoner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000).

A prisoner seeking relief pursuant to § 2255 bears the burden of establishing the claims asserted in his motion. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). "It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct

7

appeal.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *United States v. Frandy*, 456 U.S. 152, 166, 102 S. Ct. 1584, 1593 (1982)).

In cases where a factual dispute exists, "'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). A factual dispute is deemed to exist where a prisoner presents "a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible' and the government argues only "contrary representations" as rebuttal, the prisoner is entitled to an evidentiary hearing." *Id.* at 334. A hearing is not required, however, where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *see also Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (holding that no hearing is required where a prisoner's "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts") (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

## III.   DISCUSSION

Turner's § 2255 motion contains five claims for relief. These are: (1) that his guilty plea was coerced and tainted by the prosecutor's threat to file a sentence enhancement; (2) that his attorney was ineffective for failing to seek enforcement

of a sentencing enhancement "directive" issued by the Attorney General; (3) that his attorney created a conflict of interest by advising Turner to accept a collateral attack waiver, thus rendering ineffective assistance; (4) that his attorney was ineffective for failing to object to violations of the *McNabb-Mallory* rule and 18 U.S.C. § 3161; and (5) that several reversible Rule 11 violations occurred during Turner's plea hearing proceedings and his attorney provided "deficient performance" by failing to object to the violations.[3]

## A.    Coercion claim

Turner's first argument is that the prosecutor's purported "threat" to file a § 851 enhancement to double his mandatory sentencing minimum to twenty years "tainted and coerced" his guilty plea.[4]  In this claim, Turner challenges the voluntariness of his guilty plea.

---

[3] The Court briefly addresses two housekeeping matters.  First, the Court has rearranged the claims as set forth in the original petition.  Second, although the Government urges the Court to reject Turner's claims on the basis that he procedurally defaulted them, the Court addresses the merits of the claims in lieu of resolving the procedural default issue.  Federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 117 S. Ct. 1517, 1523 (1997)).

[4] Turner also claims that his attorney was ineffective for failing to seek enforcement of a memorandum issued by former Attorney General Eric Holder that addresses recidivist sentencing enhancements.  The ineffective assistance claim on this issue is addressed *infra*.

9

A guilty plea is deemed voluntary when it is not "extracted by any sort of threats or violence, nor obtained by any direct or implied promises . . . nor by the exertion of any improper influence." *Brady v. United States*, 397 U.S. 742, 753, 90 S. Ct. at 1471 (quoting *Bram v. United States*, 168 U.S. 532, 542-43, 18 S. Ct. 183, 187 (1897)).  In advancing the argument that his plea resulted from coercive pressure exerted by the Government, Turner shoulders a significant burden, as "[i]t has been well established that solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977).  A contrary rule would render statements made during a plea colloquy essentially "meaningless" and "condone the practice by defendants of providing untruthful responses to questions during plea [hearings]." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999).

Given Turner's statements during the plea hearing, he has failed to discharge his heavy burden of demonstrating that his guilty plea was not voluntary or that it was the product of coercion.

THE COURT: Is anyone threatening or forcing you to plead guilty?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty freely and voluntarily?

THE DEFENDANT: Yes.

10

(Plea Hr'g Tr. 5-6.)  Turner also confirmed that he was pleading guilty because he, in fact, believed he was guilty.  (*Id.* at 6.)  At the conclusion of the plea colloquoy, the Court concluded that Turner's guilty plea was given voluntarily, intelligently, and knowingly.  As stated above, Turner's statements, made under oath, are accorded are accorded a strong presumption of truth.  "[T]he fact that [Turner] may now regret having followed his attorney's advice is not grounds for relief under 28 U.S.C. § 2255."  *United States v. Kranzthor*, 614 F.2d 981, 983 (5th Cir. 1980).

Lastly, the Court notes that "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks."  *Premo v. Moore*, 562 U.S. 115, 124, 131 S. Ct. 733, 741 (2011).  "The opportunities include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome at trial."  *Id.*  The risks associated with negotiating plea agreements include the recognizable risk of "losing the chance for a defense verdict," as well as entering an agreement before "the prosecution finds its case is getting weaker, not stronger."  *Id.*  With the risks and benefits in mind, Turner entered into a complex negotiation process with the Government for a lower sentence than the mandatory minimum under a § 851 enhancement.  It stands to reason that in light of this complex negotiation, Turner was not coerced into accepting the plea

agreement. As a matter of fact, Turner confirmed, in open court, that no one was forcing or threatening him to plead guilty.

In short, the Court is unable to conclude that Turner has made a cognizable coercion claim with regard to his plea of guilty. Indeed, as the Supreme Court of the United States has explained, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73-74, 97 S. Ct. at 1629. The lack of factual assertions in the petition undermining Turner's statements at the plea hearing mean that Turner has failed to discharge his burden of demonstrating that he is entitled to an evidentiary hearing. It necessarily follows that Turner has not discharged the more demanding burden of showing that he is entitled to relief on this claim.

## B.   Ineffective Assistance of Counsel Claims

Each of the remaining claims asserted in Turner's petition involve his trial counsel's purported ineffectiveness.

### 1.   *Legal Framework*

Criminal "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 1384 (2012) (citations omitted). It follows that criminal defendants are

12

"entitled to the effective assistance of competent counsel[]" "[d]uring plea negotiations[.]" *Id.* (internal quotation marks and quotation omitted). The effectiveness of counsel rests upon the now-familiar two-component performance and prejudice framework first articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). To prevail on such a claim, a prisoner must demonstrate (1) that his attorney's performance was deficient in that it fell below an objective standard of reasonableness and (2) that, but for the deficiency, the outcome of the proceedings would have been different. *Id.* at 694, 104 S. Ct. at 2068.

The *Strickland* standard applies to guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985). "In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence." *Griffin*, 330 F.3d at 736. To demonstrate prejudice, the party seeking to establish ineffective assistance of counsel "must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384 (citation omitted); *see also Hill*, 474 U.S. at 59, 106 S. Ct. at 370 (explaining that the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process"). In a case such as this involving a "claim that ineffective assistance led to the improvident acceptance of a guilty plea," the claimant must demonstrate

13

"'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Lafler*, 132 S. Ct. at 1384-85 (quoting *Hill*, 474 U.S. at 59, 106 S. Ct. at 370) (alteration in original).

### 2.   *Counsel's Failure to Seek Enforcement of Attorney General Memorandum*

Turner asserts that his attorney was constitutionally-ineffective for failing to seek enforcement of a memorandum issued by then Attorney General Eric Holder on the subject of recidivist sentence enhancements in the federal criminal justice system.[5]   Turner maintains that but for his attorney's deficient performance, he would not have pled guilty and instead would have insisted on going to trial.

In the memorandum issued to federal prosecutors on August 12, 2013, which Turner uses as support for his coercion claim in the body of his motion, former Attorney General Holder provided the following guidance on the subject of recidivist enhancements:

> **Recidivist Enhancements:** Prosecutors should decline to file an information pursuant to 21 U.S.C. § 851 unless the defendant is involved in conduct that makes the case appropriate for severe sanctions. When determining whether an enhancement is appropriate, prosecutors should consider the following factors:
>
> - Whether the defendant was an organizer, leader, manager or supervisor of others within a criminal organization;

---

[5] Although Turner refers to this memorandum as a "directive," it is clearly labeled a memorandum.

- Whether the defendant was involved in the use or threat of violence in connection with the offense;

- The nature of the defendant's criminal history, including any prior history of violent conduct or recent prior convictions for serious offenses;

- Whether the defendant has significant ties to large-scale drug trafficking organizations, gangs, or cartels;

- Whether the filing would create a gross sentencing disparity with equally or more culpable co-defendants; and

- Other case-specific aggravating or mitigating factors . . . .

Mem. from Att'y Gen. Holder to U.S. Att'y's and Assistant Att'y Gen. for the Crim. Div. at 3 (Aug. 12, 2013).[6]

In addition to this Court's conclusion that the memorandum is not a "directive" for the simple reason that it does not contain obligatory language, but rather provides permissive instruction on the utilization of recidivist sentencing enhancements, there are two reasons that Turner's ineffective-assistance claim fails. First, Turner fails to acknowledge that the recidivist enhancements are permitted in certain circumstances, and some conditions permitting a prosecutor to

---

[6] Although Turner relies heavily on this memorandum, he failed to attach it to his petition, or to the various court filings he submitted after the Government filed its response brief. The Court located this document on an online search engine and can be viewed at:
http://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/ag-memo-department-policypon-charging-mandatory-minimum-sentences-recidivist-enhancements-in-certain-drugcases.pdf.

seek such an enhancement are applicable to his criminal case.  For instance, ten kilograms of cocaine were sent to Turner, making it plausible that he was at least a manager in a criminal enterprise involving large-scale drug distribution.  Further, at the time of his arrest, Turner was on supervised release from a 2003 conviction for conspiracy to possess with intent to distribute and to distribute more than fifty grams of crack.

The second reason Turner's claim fails is that the memorandum specifically indicates that "[t]he policy set forth herein is not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding."  *Id.* at 2 n.2 (citing *United States v. Caceres*, 440 U.S. 741, 99 S. Ct. 1465 (1979)).  In light of this language, any objection by Turner's counsel would have been futile, as the guidance provided to federal prosecutors did not create an enforceable right. Because deficient performance cannot be predicated upon a failure to raise a meritless objection, Turner's ineffective assistance claim on this issue fails as a matter of law.  *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).  There is, therefore, no need to hold an evidentiary issue on this matter.

### 3.   *Conflict of Interest Claim*

Turner also contends that his counsel performed deficiently because he created an inherent conflict of interest by advising Turner to sign a Rule 11 plea agreement containing appellate and collateral attack waivers.  According to Turner,

16

it is unethical for counsel to advise a client to enter into a contract that restricts his ability to challenge the advice later.

It is axiomatic to those practicing law that attorneys owe their clients a "duty of loyalty" which includes the duty "to avoid conflicts of interest." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064. Indeed, "[w]here a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S. Ct. 1097, 1103 (1981) (citations omitted); *Mickens v. Taylor*, 535 U.S. 162, 179, 122 S. Ct. 1237, 1248 (2002) (Kennedy, J., concurring) ("The Sixth Amendment protects the defendant against an ineffective attorney, as well as a conflicted one."). In order to succeed on this claim, Turner must demonstrate that "his counsel's activity represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993) (citing, *inter alia*, *Cuyler v. Sullivan*, 446 U.S. 335, 345-50, 100 S. Ct. 1708, 1716-19 (1980)). This is because the United States Court of Appeals for the Sixth Circuit "has rejected a per se rule as to conflicts of interest and requires proof of an actual conflict." *Id.* (citation omitted). In other words, to prevail on his claim, Turner must "point to specific instances in the record to suggest an actual conflict or impairment of his interests and must demonstrate that the attorney made a choice between possible alternative courses

17

of action." *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996) (citing *United States v. Hopkins*, 43 F.3d 1116, 1118 (6th Cir. 1995)). A conflict of interest only occurs when a defense attorney "is required to make a choice advancing his own interests to the detriment of his client's interests." *Daniels v. United States*, 54 F.3d 290, 294 (7th Cir. 1995) (internal quotation marks omitted).

In this case, Turner fails to point to a single instance where his counsel made a choice advancing his own interests to the detriment of his client, and the Court, therefore, concludes that no conflict existed. While it is true that Turner signed a Rule 11 agreement that contained appellate and collateral attack waivers, such waivers were once standard in federal practice.[7] To the extent that Turner relies on *United States v. Kentucky Bar Association*, 439 S.W.3d 136 (Ky. 2014) for the proposition that such waivers violate Sixth Amendment's guarantee of the effective assistance of counsel on the basis that they create an inherent conflict of interest, the reliance is misplaced. As an initial matter, decisions of the Kentucky Supreme Court may be given respectful consideration to the extent the decisions

---

[7] Turner does not challenge the validity of his waiver. *Cf. United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2005) ("Although a defendant in a criminal case may waive the right to appeal, the waiver must be knowing and voluntary."). Further, Turner acknowledged understanding the waiver provisions during the plea hearing. (Plea Hr'g Tr. 9.) On this note, the Court finds it appropriate to point out that Federal Rule of Criminal Procedure 11(b)(1)(N) requires a trial court to "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence[.]" On its face, this Rule permits prosecutors to offer a defendant a plea agreement containing appellate and collateral attack waivers.

are persuasive on a matter of federal law. Such decisions, however, are not binding on this Court. Relatedly, while the cited case implicates Sixth Amendment jurisprudence, the case's holding is directly traceable to state law, specifically Kentucky's Rules of Professional Conduct. *Id.* at 157-58 ("Attorneys practicing in this Commonwealth, whether state or federal, must comply with our ethics rules. Accordingly, either defense counsel or prosecutors inserting into plea agreements waivers of collateral attack, including [ineffective assistance of counsel], violates our Rules of Professional Conduct.").

Second, in a memorandum sent to all federal prosecutors on October 14, 2014 and authored by Deputy Attorney General James M. Cole, the Department of Justice promulgated a new policy regarding including waivers of ineffective assistance claims in Rule 11 agreements. Mem. from Deputy Att'y Gen. Cole to Fed. Prosecutors, (Oct. 14, 2012).[8] Although this memorandum issued prior to Turner's guilty plea and sentence, the memorandum specifically provides:

> For cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve.

*Id.* The Court does not believe that either precondition to waiving enforcement is applicable, as there is no evidence of a conflict of interest resulting in prejudice, or

---

[8] Available at: http://www.justice.gov/file/70111/download.

19

of any deficient performance on the part of Turner's trial counsel that would even arguably fall within *Strickland*'s purview.  Here, Turner signed a Rule 11 plea agreement that included a standard waiver provision.  His attorney advised him to sign the agreement in order to mitigate the effects of a possible sentence enhancement pursuant to 21 U.S.C. § 851.  The penalty under the sentence enhancement would have been 240 months.  Turner and his attorney negotiated for a significantly shorter sentence of 180 months.  This strategy does not strain reason with respect to what could be considered reasonable professional assistance in the client's interest.  In light of the above reasoning, the Court fails to see how this alleged conflict of interest amounts to ineffective representation.

In sum, because Turner has failed to point to a single instance in which his attorney acted in his own interest as opposed to his client's, relief is not warranted on Turner's ineffective assistance claim involving an alleged conflict of interest. Further, because Turner has not pointed to any facts suggesting that such a claim is plausible, the Court declines to hold an evidentiary hearing on the subject.

**4.    *Timing Claims***

In his next ineffective assistance claim, Turner claims that his counsel performed deficiently for failing to object to various timing issues.

    *a.*    McNabb-Mallory *Violation*

20

Turner asserts that his counsel was ineffective for failing to object to a violation of what has become known as the *McNabb-Mallory* rule.[9]  This rule "generally render[s] inadmissible confessions made during periods of detention that violat[e] the prompt presentment requirement of Rule 5(a)."[10]  *United States v. Alvarez-Sanchez*, 511 U.S. 350, 354, 114 S. Ct. 1599, 1602 (1994); *Corley v. United States*, 556 U.S. 303, 306, 129 S. Ct. 1558, 1562 (2009) ("[A]n arrested person's confession is inadmissible if given after an unreasonable delay in bringing him before a judge.").  Turner claims that the confessions he gave before being presented to a magistrate judge violate the "spirit" of *McNabb-Mallory*.  Therefore, Turner concludes that his Sixth Amendment rights to effective assistance of counsel were violated because his attorney did not object to these violations.

The problem with Turner's argument is that he ignores the import of a federal statute enacted by Congress in the wake of *McNabb-Mallory* and codified at 18 U.S.C. § 3501.  Subsection (c) of the statute provides:

---

[9] "In *McNabb*, the Supreme Court established an exclusionary remedy for confessions taken in violation of the common-law prompt-presentment requirement; the Court reaffirmed its *McNabb* holding in *Mallory*."  *United States v. McDowell,* 687 F.3d 904, 908 (7th Cir. 2012).  Thus, the rule became known as *McNabb-Mallory*.

[10] Rule 5(a) provides: "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . unless a statute provides otherwise."  Fed. R. Crim. P. 5(a).

> [A] confession made or given by a person . . . while such person was
> under arrest or other detention in the custody of any law-enforcement
> officer or law-enforcement agency, *shall not* be inadmissible solely
> because of delay in bringing such person before a magistrate judge . . .
> if such confession is found by the trial judge to have been made
> voluntarily . . . and if such confession was made or given by such
> person *within six hours* immediately following his arrest or other
> detention . . . .

18 U.S.C. § 3501(c) (emphasis supplied).  In this case, Turner was arrested at
approximately 11:30 AM and was released at approximately 5:30 PM.  (Pet'r's
Mot. to Expand 9.)  After being taken into custody, law enforcement officials
advised Turner of his *Miranda* rights, which he waived prior to giving a
confession.  His confession fell within the six-hour period permitted by statute.

Moreover, although it is undisputed that Turner was not taken before a
magistrate judge, he signed a waiver of appearance and, subsequent to giving his
confession, he was released from custody.  Turner signed the waiver of appearance
before a magistrate judge at 2:32 PM, approximately three hours after his arrest.[11]

---

[11] Turner contends the waiver he executed is void for two reasons.  Turner's
first argument, however, is wholly unclear:

> Movant Turner argues firmly for him to enter a voluntary waiver
> pursuant to the Federal Rules of Criminal Procedure 10 (b) (2), the
> defendant, in a written waiver signed by both the defendant and the
> defense counsel, has waived appearance and has affirmed that the
> defendant received a copy of the indictment or information that is not
> guilty.

(Pet'r's Mot. to Expand 8.)  To the extent the above quoted language implies that
the waiver itself is somehow voidable as the product of coercion, the Court
disagrees.  The second sentence of the wavier reads: "My decision to waive this

22

(Gov't's Resp., Ex. 1.)  Because Turner waived his right to prompt presentment

before a magistrate judge by signing the waiver, he relinquished the protections of

*McNabb-Mallory* and § 3501(c), including any exclusionary remedy for violations

thereof.  *United States v. McDowell*, 687 F.3d 904, 910-911 (7th Cir. 2012)

("Where the defendant waives his Rule 5(a) right, there is no reason for judicial

inquiry into whether the delay in presentment was unreasonable or unnecessary

under § 3501(c) and *McNabb-Mallory*.").

Turning now to Turner's claim that his counsel rendered constitutionally

inadequate assistance, the Court concludes that the claim fails because counsel

---

appearance is freely and voluntarily given and without any threats or coercion on
the part of the arresting agents, officers, or inspectors."  (Gov't's Resp., Ex. 1.)
Turner signed the waiver and by doing so, he acknowledged that he was not
coerced.  He has not alleged additional facts that would undermine the validity of
the wavier.  The waiver is therefore enforceable.
Secondly, Turner asserts that in order for him to voluntarily waive
presentment pursuant to Rule 5(a), he must have given up his right to presentment
for a specified period of time.  Here, however, the waiver contained no end date.
For example, in *United States v. McDowell*, 687 F.3d 904 (7th Cir. 2012), the
defendant's waiver was valid for a duration of seventy-two hours.  By contrast, the
waiver Turner executed contained a line to specify when the waiver expired and
when the defendant must appear before a magistrate judge, but it was left blank.
(Gov't's Resp., Ex. 1.)  As a result, the waiver failed to specify an amount of time
that it would remain effective.  Turner takes issue with this because a wavier
cannot reasonably last forever.  However, Turner does not cite any authority
standing for the proposition that those seeking such a waiver are duty-bound to
include a specific length of time during which the waiver is valid.  The Court
believes that the waiver in *McDowell* lasted for seventy-two hours because the
defendant in that case remained in custody.  Because Turner was released after
confessing, there was no need to promptly present him to a magistrate judge to
ensure that his Fourth Amendment rights were adequately protected.

cannot be ineffective for failing to present a meritless objection. *Mapes*, 171 F.3d at 413. No evidentiary hearing is required on this claim because the record conclusively establishes that Turner's confession was made within six hours of being taken into custody and, there is, therefore, no constitutional or statutory violation which would entitle Turner to the relief he seeks.

   b.   *Speedy Trial Act Violation*

   Turner argues that his counsel was ineffective for failing to seek the dismissal of the indictment for a violation of the Speedy Trial Act, 18 U.S.C. § 3161. This statute provide, in pertinent part, that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Turner contends that because more than thirty days elapsed between his arrest on May 15, 2012 and the filing of the indictment (which was filed under seal) on September 18, 2012, his counsel was ineffective for failing to seek dismissal of the criminal charges against him. This argument lacks merit.

   It is a well-established principle that "[a] defendant is not 'arrested' for purposes of the Speedy Trial Act until formal federal charges are pending, that is, when a formal complaint or charge is issued." *United States v. Salgado*, 250 F.3d 438, 454 (6th Cir. 2001); *see also United States v. Graef*, 31 F.3d 362, 364 (6th

24

Cir. 1994) ("[C]ourts [have] unanimously . . . conclude[d] that the arrest 'trigger' for § 3161(b) applies only to arrests made either on a complaint or which were immediately followed by a complaint.").

In this case, no criminal complaint was filed against Turner after his arrest (namely, because he was released from custody), so the thirty-day clock within which to indict him never started. "[B]ecause no complaint was ever filed against [defendant] there could be no 'arrest' for purposes of beginning the 30-day pre-indictment clock." *Graef*, 31 F.3d at 364. Since Turner was not arrested for purposes of starting the Speedy Trial Act clock, his claim that counsel was ineffective for failing to seek dismissal of the indictment on this basis necessarily fails, and no evidentiary hearing is required.

### 5.   *Rule 11 Violations*

In his final claim for relief, Turner argues that several Rule 11 violations occurred during his plea hearing and that his attorney performed deficiently by failing to object thereto. (Pet'r's Mot. to Expand 15.) The Court briefly addresses each claimed violation.

First, Turner argues that the Court failed to personally address and inform him of the Court's obligation to provide sentencing guidelines and to consider that range pursuant to Federal Rule of Criminal Procedure 11(b)(1)(M). However,

during the plea hearing, Turner was specifically and directly advised and informed

of the sentencing guidelines range:

> THE COURT: I have before me a document entitled a Rule 11 Plea
> Agreement which appears on page four to indicate that defendant's
> guideline range is 120 to 135 months, is that your understanding of the
> range you've agreed to?
>
> THE DEFENDANT: Yes.
>
> THE COURT: On Page five at 3(a) under the topic "imprisonment", it
> says, "The sentence of imprisonment may not exceed the top of the
> sentencing guideline as determined by paragraph 2B", which is 135
> months, do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And it also indicates that the court must impose a
> statutory sentence of at least 10 years.
>
> THE DEFENDANT: Yes.
>
> THE COURT: It also indicates, pursuant to this agreement, the
> Government and Defendant, the court must impose a sentence of
> imprisonment on Count One of at least 15 years, is that your
> understanding?
>
> THE DEFENDANT: Yes.

(Plea Hr'g 5.)  Based on the evidence in the record, Turner's first claim of error

with respect to the plea colloquy fails.

Turner also argues that the Court failed to inform him of the special

assessment fee of $100.00 and that this failure violates Federal Rule of Criminal

Procedure 11(b)(1)(L), which requires courts to inform criminal defendants of any special assessment they may be required to remit. Relatedly, Turner argues that relief is warranted on his Rule 11 claim because the Court violated Rule 11(b)(1)(H) by failing to inform him of the requirement that the Court impose a term of supervised release after his term of incarceration. While it is true that the Court did not explain the special assessment or supervised release provision to Turner, Turner was made aware of both in his Rule 11 agreement, an agreement he knowingly and voluntarily signed after reviewing its terms with his attorney. The Court does not believe that the failure to apprise Turner of the special assessment fee or that he would be required to serve a term of supervised release once discharged from his term of incarceration constitutes a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Riggs*, 209 F.3d at 831. As such, the Court does not persuaded that relief is warranted on either ground, as counsel may have had a strategic reason for not objecting to these omissions.

## IV.   CERTIFICATE OF APPEALABILITY

When a district court enters a final order adverse to a § 2255 movant, it must issue or deny a certificate of appealability. Because the Court has denied the claims presented in Turner's § 2255 motion, it must make a determination as to whether a certificate of appealability is justified. A certificate of appealability may

27

issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a) of the Rules Governing Section 2255 Proceedings.  The Supreme Court has stated that in order to establish entitlement to a certificate of appealability in regard to § 2255, a movant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04 (2000) (internal quotation marks and citation omitted).  The Court does not believe that reasonable jurists would find the Court's assessment of the merits of Turner's claims debatable or wrong. Accordingly, a certificate of appealability shall not issue.

## V.   CONCLUSION AND ORDER

For the reasons stated above, the Court concludes that Turner is not entitled to the relief he seeks in his § 2255 motion.

Accordingly,

**IT IS ORDERED** that Turner's motion to amend in relation-back to original § 2255 petition (ECF No. 30) and motion to expand the scope of § 2255 proceedings record (ECF No. 31) are **GRANTED** to the extent that the Court has

28

considered the arguments advanced in both as well as the attached exhibits but are

**DENIED** to the extent that either requests any relief from this Court;

**IT IS ORDERED** that Turner's motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255, including the request that this Court

conduct an evidentiary hearing, is **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability **SHALL**

**NOT ISSUE**.

Dated: August 4, 2015

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**Alvin Julian Turner**, 29561-044
Milan Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 1000
Milan, MI 48160

**William W. Swor, Esq.**
**Hala Y. Jarbou, AUSA**